United States District Court
Southern District of Texas

**ENTERED**

May 05, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMCREST GLOBAL HOLDINGS LIMITED, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-22-3786 |
| | § | |
| BONA FIDE MASKS CORP., and BALL CHAIN MANUFACTURING CO., INC., | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| BONA FIDE MASKS CORP., and BALL CHAIN MANUFACTURING CO., INC., | § | |
| | § | |
| | § | |
| | § | |
| Counterclaimants, | § | |
| | § | |
| v. | § | |
| | § | |
| AMCREST GLOBAL HOLDINGS LIMITED, BNX CONVERTING, LLC, and ACCUMED BIOTECH TECHNOLOGIES LLC, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Counterclaim-Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Amcrest Global Holdings Limited ("Plaintiff" or "Amcrest"), brings this action against Defendants, Bona Fide Masks Corp. ("BFM") and Ball Chain Manufacturing Co., Inc. ("BCM") (collectively, "Defendants" and "Counterclaimants"), for infringement of Registered Copyright Nos. VA0002238127 and VA0002238128 issued on February 20, 2021 ("the Claimed

Copyrights"), in violation of the Copyright Act, to 17 U.S.C. § 101 et seq.[1]  Defendants not only deny Plaintiff's allegations of copyright infringement, but also assert the following seven counterclaims against Plaintiff, BNX Converting, LLC ("BNX"), and Accumed Biotech Technologies LLC ("Accumed") (collectively, "Counterclaim-Defendants"): (1) false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) trademark infringement in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114; (3) unfair competition in violation of Texas common law; (4) declaratory judgment that the claimed copyrights are invalid because they do not comprise "original works of authorship" under 17 U.S.C. § 102(a); (5) a request pursuant to 17 U.S.C. § 411(b)(2) for cancellation of copyrights for willfully misstating or failing to state a fact that, if known, might have caused the Copyright Office to reject the applications for the Claimed Copyrights; (6) declaratory judgment that Counterclaim-Defendants' rights, if any, in the Claimed Copyrights are limited to the actual deposit copies; and (7) abuse of process.[2]  Counterclaim-Defendants not only deny these counterclaims, but also assert the following five

---

[1]Amended Complaint for Copyright Infringement, Docket Entry No. 9.

[2]Bona Fide Masks Corp. and Ball Chain Manufacturing Co., Inc.'s Answer, Affirmative Defenses, and Counterclaims ("Defendants' Answer, Affirmative Defenses, and Counterclaims"), Docket Entry No. 21, pp. 16-37 ¶¶ 1-139.  Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

counterclaims against BFM and BCM: (1) declaratory judgment that Counterclaimants have no standing to enforce the first, second, third, and seventh counterclaims for false advertising, trademark infringement, unfair competition, and abuse of process, respectively, because these counterclaims are subject to mandatory arbitration; (2) declaratory judgment that Counterclaimants have no standing to sue under the POWECOM trademark; (3) false advertising because Counterclaimants' assertions that they are the exclusive distributors of POWECOM Mask Products in the United States are false, misleading, and violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) unfair competition under Texas common law; and (5) abuse of process because Counterclaimants are using the court's process not seek justice but, instead, to harm Counterclaim-Defendants.[3]

Pending before the court are four motions filed by Counterclaim-Defendants: (1) Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration under Rule 12(b)(1) or 12(b)(3) ("Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration") (Docket Entry No. 36); (2) Counterclaim-Defendants' Motion to Dismiss Under Rule 12(b)(1) or Misjoinder of Parties Under F.R.C.P. Rule 21 ("Counterclaim-Defendants' Motion to Dismiss for Misjoinder") (Docket Entry No. 37); (3) Counterclaim-

---

[3]Counterclaim-Defendant Counterclaimants Reply, Affirmative Defenses, and Counterclaims, Docket Entry No. 39, pp. 36-42 ¶¶ 1-26.

Defendants' Motion to Dismiss Improper Party under F. R. Civ. P. 21 ("Counterclaim-Defendants' Motion to Dismiss Improper Party") (Docket Entry No. 38); and (4) Counterclaim-Defendants' Motion for Judgment on the Pleadings as to Counterclaimants' First and Seventh Counterclaims Based on Counterclaimants' Inability to Prove False Advertising and Abuse of Process ("Counterclaim-Defendants' Motion for Judgment on the Pleadings") (Docket Entry No. 40).  For the reasons stated below Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration will be granted as to the seventh counterclaim asserted against BNX and otherwise denied; Counterclaim-Defendants' motions to dismiss for misjoinder and improper party will be denied; and Counterclaim-Defendants' Motion for Judgment on the Pleadings will be denied as to the false advertising counterclaim and granted as to the abuse of process counterclaim.

## I.  **Factual Allegations and Procedural Background**

### A.  **Procedural Background**

Amcrest initiated this action on October 31, 2022, by filing a Complaint for Copyright Infringement (Docket Entry No. 1) that was never served.  On January 11, 2023, Amcrest filed an Amended Complaint for Copyright Infringement, which asserts two counts of

infringement, one for each of the Claimed Copyrights.[4]  On February 7, 2023, BFM and BCM filed their Answer, Affirmative Defenses, and Counterclaims, naming Amcrest, BNX, and Accumed as Counterclaim-Defendants (Docket Entry No. 21).   On February 27, 2023, Counterclaim-Defendants filed the pending Motion to Dismiss and Compel Arbitration (Docket Entry No. 36),  Motion to Dismiss for Misjoinder (Docket Entry No. 37), and Motion to Dismiss Improper Party (Docket Entry No. 38).  On February 28, 2023, Amcrest, BNX, and Accumed filed Counterclaim-Defendant Counterclaimants Reply, Affirmative Defenses, and Counterclaims (Docket Entry No. 39), and the pending Motion for Judgment on the Pleadings (Docket Entry No. 40).  On March 21, 2023, BFM and BCM filed Bona Fide Masks Corp. and Ball Chain Manufacturing Co., Inc.'s Answer to Counterclaim-Defendants' Counterclaims ("Answer to Counterclaim-Defendants' Counterclaims") (Docket Entry No. 50).

## B.   Factual Allegations

### 1.   Amcrest's Claims Against BFM and BCM

Asserting that "[a]mong the many business product and service offerings [it] makes available to its customers is a respirator mask,"[5] Amcrest alleges that it commissioned commercial designer

---

[4]Amended Complaint for Copyright Infringement, Docket Entry No. 9, pp. 24-27 ¶¶ 39-59.

[5]Amended Complaint for Copyright Infringement, Docket Entry (continued...)

Mr. Efendi Egemen ("Egemen") to create a unique image rendition of a respirator mask for use in marketing its respirator mask line of business. Amcrest alleges that on June 16, 2020, Egemen circulated an expressive creation titled "3D Rendition of Respirator Mask," and that this image was published on June 19, 2020.[6] Amcrest alleges that subsequently Egemen created derivative expressive creations titled "3D Rendition of Respirator Mask with Banner," published June 19, 2020,[7] "3D Rendition of Respirator Mask with Head Band Loops," published on July 15, 2020,[8] and "3D Rendition of Respirator Mask with Ear Loops," published on July 16, 2020.[9] Amcrest alleges that the four images are known collectively as "Egemen Creative Respirator Mask Images."[10]

Amcrest alleges that the Egemen Creative Respirator Mask Images were used by competitors without authorization, including by Defendants BFM and BCM, and that on December 16, 2020, it filed a Notice with GoDaddy to remove the Egemen Creative Respirator Mask Images from Defendants' Website.[11]

---

[5](...continued)
No. 9, p. 3 ¶ 12.

[6]Id. at 3-4 ¶¶ 12-13.

[7]Id. at 4-5 ¶ 14.

[8]Id. at 5-6 ¶ 15.

[9]Id. at 6 ¶ 16.

[10]Id. at 7 ¶ 16.

[11]Id. ¶¶ 17-18.

Amcrest alleges that it filed applications for copyright registration for the image "3D Rendition of Respirator Mask," and the "3D Rendition of Respirator Mask with Banner."[12]  On February 20, 2021, the United States Copyright Office issued to Amcrest Certificate of Registration No. VA000223817 for "3D Rendition of Respirator Mask," and Certificate of Registration No. VA000223818, for "3D Rendition of Respirator Mask with Banner."  The effective date of both registrations is December 18, 2020.[13]

Amcrest alleges that on January 15, 2021, Mr. Adam Ravat ("Ravat") of Amcrest called Mr. William Taubner ("Taubner") of BCM and demanded that Defendants stop using the copyrighted images, that Taubner agreed to remove the images from Defendants' Website, but instead of removing the images from the website, Defendants doctored the images with nominal alterations and continued to display the doctored images on their Website.[14]  Amcrest alleges that it has since made numerous complaints about Defendants' continued use of the doctored images to hosts of various websites.[15]

---

[12]Id. at 8 ¶ 19.

[13]Id. at 8-9 ¶¶ 20-21.

[14]Id. at 11-12 ¶¶ 25-26.

[15]Id. at 12-16 ¶¶ 27-32.

2.  <u>BFM's and BCM's Answer, Affirmative Defenses, and Counterclaims Against Amcrest, BNX and Accumed</u>

BFM and BCM deny Amcrest's allegations of copyright infringement[16] and assert as Counterclaimants that the Claimed Copyrights are two depictions of Counterclaimants' POWECOM Mask Products[17] and that Amcrest's Copyright Registrations are invalid.[18] BFM and BCM allege that they and their predecessors-in-interest have long marketed masks and other personal protective equipment ("PPE") under the name and mark POWECOM (the "POWECOM Trademark"), that BCM has registered the POWECOM Trademark with the United States Patent and Trademark Office under U.S. Trademark Reg. No. 6,003,980[19] and that BFM has been and is the exclusive United States distributor of POWECOM Mask Products.[20]

Counterclaimants allege that Amcrest sells N95 masks under the Amcrest brand, that Amcrest brand products are sold by "BNX Accumed," and that Accumed is the authorized distributor of Amcrest brand products.[21] Counterclaimants allege that BNX produces KN95 masks and PPE that compete directly with their POWECOM Mask

---

[16]Defendants' Answer, Affirmative Defenses, and Counterclaims, Docket Entry No. 21, pp. 12-13 ¶¶ 38-61.

[17]<u>Id.</u> at 26 ¶ 51.

[18]<u>Id.</u> at 28-30 ¶¶ 67-80.

[19]<u>Id.</u> at 17-18 ¶¶ 10-15.

[20]<u>Id.</u> at 19 ¶ 16.

[21]<u>Id.</u> at 23 ¶ 36.

-8-

Products,[22] and that Accumed advertises, offers for sale, and sells products, including KN95 masks, under the Accumed brand.[23] Counterclaimants also allege that "[u]pon information and belief, Counterclaim-Defendants Amcrest, BNX and Accumed are related entities, and/or share common interest or control."[24]

Counterclaimants allege that Accumed operates a website, the KN95 Mask Website, that advertises, offers for sale, and sells BNX products but fails to disclose the relationship between Accumed and BNX.[25]  They also allege that the KN95 Mask Website includes a Testing Comparison Site where Accumed "purports to 'test every mask that we can get our hands-on and test them in our $400k laboratory."[26]  Asserting that "Accumed has no rights to distribute POWECOM products in the United States,"[27] Counterclaimants allege that Accumed features Certified POWECOM Mask Products on its Testing Comparison Site and criticizes the physical characteristics and performance of POWECOM products in a video review posted on a YouTube channel by stating, falsely or misleadingly, that Certified POWECOM Mask Products are "still passing, but on the lower side

---

[22]Id. ¶ 37.

[23]Id. ¶ 38.

[24]Id. at 24 ¶ 39.

[25]Id. ¶¶ 41-42.

[26]Id. ¶ 43 (citing the "Testing Comparison Site").

[27]Id. ¶ 44.

compared to other KN95 [masks] that we tested."[28]  Counterclaimants allege that without disclosing its relationship to BNX, Accumed purports to review BNX products on the Testing Comparison Site, and that Accumed, and — by extension — Amcrest and BNX, falsely or misleadingly award themselves 9/10 rankings on purportedly objective testing of attributes such as "comfort," "fit," and "construction quality."[29]

Counterclaimants allege that in 2021 and continuing into 2022, Counterclaim-Defendants pursued a relationship with them because they had grown to be one of the largest distributors of KN95 masks in the United States.[30]  On July 22, 2022, eighteen months after Ravat contacted them in connection with the November 2020 POWECOM Image, Counterclaimants entered an Authorized Non-Exclusive Seller Agreement with BNX for the sale of N95 and KN95 masks under the BNX mark ("the BNX Agreement"), which was executed by Ravat on behalf of BNX, and by Taubner on behalf of BFM and BCM.[31]  Counterclaimants allege that on August 24, 2022, and again on October 2, 2022, Ravat emailed Taubner inquiring "any orders?"[32]  Counterclaimants allege that on October 31, 2022, Amcrest initiated this action and

---

[28] Id. at 25 ¶ 46.

[29] Id. ¶¶ 48-49.

[30] Id. at 31 ¶¶ 89-90.

[31] Id. at 31-32 ¶ 92.

[32] Id. at 32 ¶¶ 95-96.

identified the Copyright Registrations for the first time.[33]
Counterclaimants allege that Amcrest is pursuing this action for
the improper motive of compelling them to purchase products under
the BNX Agreement.[34]

### 3.  Amcrest's, BNX's, and Accumed's Answer, Affirmative Defenses, and Counterclaims Against BFM and BCM

Counterclaim-Defendants admit that they are "affiliate
companies and that their respective affiliations invoke certain
relationships, interests, and control with respect to the
respective affiliations."[35]  Counterclaim-Defendants assert that
Accumed had legal rights to sell POWECOM branded products in the
United States for a contracted period of time,[36] including in August
of 2020 and October of 2021.[37]  Counterclaim-Defendants admit that
Accumed posts a video review of Counterclaimants' Certified POWECOM
Mask Products on a YouTube channel, but deny that Accumed features
Counterclaimants' Certified POWECOM Mask Products on its Testing
Comparison Site.[38]

---

[33]Id. ¶ 98.

[34]Id. at 32-33 ¶¶ 99-105.

[35]Counterclaim-Defendant Counterclaimants Reply, Affirmative
Defenses, and Counterclaims, Docket Entry No. 39, p. 9 ¶ 39.

[36]Id. at 10-11 ¶ 44.

[37]Id. at 13 ¶¶ 57-58.

[38]Id. at 11 ¶¶ 45-46.

## II. __The Motion to Dismiss and Compel Arbitration of the First, Second, Third, and Seventh Counterclaims__

Citing Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3), and asserting that before Amcrest initiated this action Counterclaimants, BFM and BCM, each signed the BNX Agreement, which contains a binding arbitration clause, Counterclaim-Defendants move the court to dismiss and compel arbitration of Counterclaimants' first, second, third, and seventh counterclaims for false advertising, trademark infringement, unfair competition, and abuse of process, respectively.[39]   Counterclaimants argue that the motion to dismiss and compel arbitration should be denied because the arbitration clause in the BNX Agreement does not govern their counterclaims for false advertising, trademark infringement, unfair competition, and abuse of process.[40]   Counterclaim-Defendants reply that the arbitration clause in the BNX Agreement is an open-ended "any disputes" provision that is broad enough to cover these counterclaims.[41]

---

[39]Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration, Docket Entry No. 36, p. 3.

[40]Bona Fide Masks Corp. and Ball Chain Manufacturing Co., Inc.'s Opposition to Counter-Defendants' Motion to Dismiss and Compel Arbitration (Doc. 36) ("Defendants' Opposition to Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration"), Docket Entry No. 48, p. 5.

[41]Counterclaim-Defendants' Reply to Counterclaimants' Opposition (Doc 48) to Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration (Doc 36) ("Counterclaim-Defendants' Reply in Support of Motion to Dismiss and Compel Arbitration"), Docket Entry No. 52, pp. 2-9.

**A.   Counterclaim-Defendants Are Not Entitled to Dismissal of the First, Second, Third, or Seventh Counterclaims Under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(3)**

1.   Rule 12(b)(1)

Rule 12(b)(1) governs challenges to the court's subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  Smith v. Regional Transit Authority, 756 F.3d 340, 347 (5th Cir. 2014) (quoting Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005)).  "Subject matter jurisdiction . . . can never be forfeited or waived."  Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, Central Region, 130 S. Ct. 584, 596 (2009) (citations and quotations omitted).

Unlike subject matter jurisdiction, "arbitration procedures in contracts . . . are waivable and do not affect this court's subject matter jurisdiction."  Ruiz v. Donahoe, 784 F.3d 247, 249 (5th Cir. 2015).  See also Sabatelli v. Baylor Scott & White Health, 832 F. App'x 843, 848 (5th Cir. 2020) (per curiam) ("Arbitration can be waived.").  In Ruiz the Fifth Circuit explained that

> [i]f a dispute is subject to . . . arbitration procedures, then the proper course of action is usually to stay the proceedings pending arbitration.  However, a dismissal may be appropriate "when all of the issues raised in the district court must be submitted to arbitration."  In any event, agreements to arbitrate implicate forum selection and claims-processing rules not subject matter jurisdiction.

Id. at 249-50 (quoting Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992), and citing, inter alia, Scherk v.

Alberto-Culver Co., 94 S. Ct. 2449, 2457 (1974)("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of the suit but also the procedure to be used in resolving the diispute.")). See also Alford, 975 F.2d at 1164 (explaining that dismissal is appropriate when an entire controversy is arbitrable because "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law") (citation omitted).

The court has subject matter jurisdiction over Amcrest's claims for copyright infringement under the Copyright Act, 17 U.S.C. § 101 et seq., and over Defendants' first and second counterclaims for false advertising and trademark infringement under the Lanham Act, 15 U.S.C. § 1051, et seq., because these claims all arise under the laws of the United States.  See WickFire, L.L.C. v. Woodruff, 989 F.3d 343, 349 (5th Cir. 2021) (quoting Bell v. Hood, 66 S. Ct. 773, 776 (1946) ("Federal courts have jurisdiction over a claim brought under a federal statute unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or 'is wholly insubstantial and frivolous.'")).  The court, therefore, has pendent jurisdiction over the third and seventh counterclaims for unfair competition and abuse of process under state law under 28

U.S.C. § 1367(a).  See id. at 352.  Because Counterclaim-Defendants neither argue that the court lacks subject matter jurisdiction over the federal law claims asserted in this action, nor seek an order compelling arbitration of the entire controversy, Counterclaim-Defendants' motion to dismiss the first, second, third, and seventh counterclaims under Rule 12(b)(1) for lack of subject matter jurisdiction will be denied.  See Ruiz, 784 F.3d at 249-50 & n. 12 (citing 9 U.S.C. § 3 for stating that when arbitration is required the proper course of action is to stay the proceedings).

    2.   Rule 12(b)(3)

"Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper.'  Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas, 134 S. Ct. 568, 577 & n. 2 (2013) (citing 28 U.S.C. §§ 1391 and 1400 (identifying proper venue for copyright suits)).  If venue is not proper under federal venue statutes, the case must be dismissed or transferred, but "a case filed in a district that falls within [a federal venue statute] may not be dismissed under . . . Rule 12(b)(3)."  Id.  Because Counterclaim-Defendants neither argue nor make any showing that venue is wrong or improper under 28 U.S.C. § 1400, their motion to dismiss the first, second, third, and seventh counterclaims under Rule 12(b)(3) for wrong or improper venue will be denied.

-15-

**B.    Counterclaim-Defendants Are Entitled to an Order Compelling Arbitration of the False Advertising and Abuse of Process Counterclaims Asserted Against BNX**

Asserting that "[e]ach Defendant Counterclaimant and Counterclaim-Defendant BNX entered into an Authorized Non-Exclusive Seller Agreement Reseller, Retailer, and/or Distributor in July, 2022,"[42] and that "[t]he FIRST, SECOND, THIRD, and SEVENTH Counterclaims of each Counterclaimant are disputes that fall under the Agreement,"[43] Counterclaim-Defendants seek an order compelling arbitration and striking the counterclaims for false advertising, trademark infringement, unfair competition, and abuse of process.[44]

Counterclaimants do not dispute that they entered an Agreement with BNX that contains a valid arbitration clause.  Instead, they argue that

> Counterclaim-Defendants fail to make any argument whatsoever as to how a contract between Defendants [BFM and BCM] and BNX can be applied to preclude claims which [they] assert against Amcrest and . . . Accumed, neither of whom are parties to the BNX Agreement.[45]

They also argue that

> the scope of the arbitration clause in the BNX Agreement is not "broad" but rather is specifically limited to disputes involving the underlying agreement itself. . . This is an agreement to arbitrate claims between

---

[42]Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration, Docket Entry No. 36, p. 6.

[43]Id.

[44]Id. at 7.

[45]Defendants' Opposition to Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration, Docket Entry No. 48, p. 11 n. 1.

> Defendants [BFM and BCM] and BNX arising out of the performance of the parties under the BNX Agreement . . .[46]

Citing <u>Ford v. NYLCare Health Plans of the Gulf Coast, Inc.</u>, 141 F.3d 243 (5th Cir. 1998), and <u>Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.</u>, 849 S.W.2d 380 (Tex. App. 1993, writ denied), Counterclaimants argue that "the test for whether a tort claim 'relates to' a contract depends on whether the claim could be maintained without reference to the contract, not simply whether the complaint references the contract."[47]

Counterclaim-Defendants reply that Counterclaimants' reliance on <u>Ford</u> and <u>Hearthshire</u> is misplaced because the arbitration provision at issue here is not a narrow — "arising out of or relating to this agreement" — provision like those at issue in <u>Ford</u> and <u>Hearthshire</u>, but, instead, a broad — "any disputes" — provision capable of expansive reach.[48]   Citing <u>Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.</u>, 138 F.3d 160 (5th Cir.), <u>cert. denied</u>, 119 S. Ct. 179 (1998), and <u>Woodmen of World Life Insurance Society/Omaha Woodmen Life Insurance Society v. JRY</u>, 320 F. App'x 216, 221-22 (5th Cir.), <u>cert. denied</u>, 130 S. Ct. 624 (2009), Counterclaim-Defendants argue that the court should compel arbitration because

---

[46]<u>Id.</u> at 11-12.

[47]<u>Id.</u> at 12.

[48]Counterclaim-Defendants' Reply in Support of Motion to Dismiss and Compel Arbitration, Docket Entry No. 52, pp. 5-9.

it is at least "fairly debatable" that Counterclaimants'
FIRST COUNTERCLAIM False Advertising and SEVENTH
COUNTERCLAIM Abuse of Process fall within the bounds of
the Arbitration Agreement. <u>See</u> <u>In re [Complaint of]</u>
<u>Hornbeck Offshore (1984) Corp.</u>, 981 F.2d 752, 755 (5th
Cir. 1993)[(explaining that "any dispute" clauses are
very broad, and collecting cases involving such
clauses)]. Counterclaimants could not have alleged its
FIRST COUNTERCLAIM . . . and SEVENTH COUNTERCLAIM . . .
**<u>but for</u>** the Arbitration Agreement. . . Therefore, the
arbitration clause in the Arbitration Agreement is at a
minimum "susceptible of an interpretation that covers the
asserted dispute," and so the Court must resolve doubts
in favor of coverage.[49]

1.   <u>Applicable Law</u>

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 <u>et seq.</u>,

creates "a body of federal substantive law of arbitrability,

applicable to any arbitration agreement within the coverage of the

Act." <u>Moses H. Cone Memorial Hospital v. Mercury Construction</u>

<u>Corp.</u>, 103 S. Ct. 927, 941 (1983) (citing <u>Prima Paint Corp. v.</u>

<u>Flood & Conklin Manufacturing Corp.</u>, 87 S. Ct. 1801, 1805-06

(1967)). Underlying the FAA is "the fundamental principle that

arbitration is a matter of contract." <u>AT&T Mobility LLC v.</u>

<u>Concepcion</u>, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks

omitted). <u>See also</u> <u>Washington Mutual Finance Group, LLC v. Bailey</u>,

364 F.3d 260, 264 (5th Cir. 2004)("The purpose of the FAA is to

give arbitration agreements the same force and effect as other

contracts — no more and no less.").

---

[49]<u>Id.</u> at 8.

Section 2 of the FAA states that a written arbitration agreement in any contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . ." 9 U.S.C. § 2.

Section 3 of the FAA requires federal courts, on a party's motion, to stay litigation of claims subject to arbitration. 9 U.S.C. § 3.

Section 4 of the FAA permits a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written agreement.  9 U.S.C. § 4.  Courts apply a two-step inquiry when determining a motion to compel arbitration.  See OPE International LP v. Chet Morrison Contractors, Inc., 258 F.3d 443, 445 (5th Cir. 2001) (per curiam) (citing Webb v. Investacorp, Inc., 89 F.3d 252, 257-58 (5th Cir. 1996) (per curiam) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3355 (1985))).  The first step is to determine whether the parties agreed to arbitrate their dispute.  Id.  The second step is to determine "whether legal constraints external to the parties' agreement foreclose[] the arbitration of those claims." Id. at 446 (citing Webb, 89 F.3d at 258).  Because no party contends that a federal statute or policy bars arbitration, the court's analysis is restricted to the first step of the inquiry.

The first step requires courts to answer two questions: (1) whether there is a valid agreement to arbitrate, and, if so,

(2) whether the claims at issue fall within the scope of that agreement.  OPE International, 258 F.3d at 445.  Ordinary principles of state law governing the formation of contracts determine whether there is a valid agreement to arbitrate, id., but when "determining the scope of a valid arbitration agreement, [courts] apply federal policy and resolve ambiguities in favor of arbitration." Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 237 (5th Cir. 2013).  "As a contract interpretation issue, a court can only determine arbitrability by looking to the arbitration clause itself." Halliburton Energy Services, Inc. v. Ironshore Specialty Insurance Co., 921 F.3d 522, 531 (5th Cir. 2019).  If the court finds that a valid agreement to arbitrate exists and that the claims asserted fall within the scope of that agreement, the court is required to compel arbitration.  Id.  If, however, the court finds that there is no arbitration agreement between the parties, or that no dispute falls within the scope of a binding arbitration agreement, the court must deny the motion to compel arbitration with prejudice.  Id. at 531-32.  The court's "sole responsibility is to determine whether this dispute is governed by an arbitration [agreement], not to determine the merits of the dispute." Pennzoil Exploration & Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998).

2.   <u>Application of the Law to the Facts</u>

(a)   Counterclaimants  Have  a  Valid  Agreement  to
Arbitrate with BNX, but not with Amcrest or Accumed

Counterclaim-Defendants cite ¶ 8(e) of the BNX Agreement as a

valid agreement to arbitrate between the parties that has existed

since July of 2022.[50]   That agreement states:

> e. Choice of Law/Forum.   This **Authorized Non-Exclusive
> Seller  Agreement**  is  governed  by  Texas  law  and  any
> disputes  will  be  resolved  by  arbitration  in  Houston,
> Texas, before a single arbitrator chosen by the **Parties**.
> If  the  **Parties**  cannot  agree  upon  an  arbitrator,  each
> **Party** shall choose an arbitrator and the two arbitrators
> chosen shall choose a third arbitrator and the dispute
> will  be  arbitrated  by  a  panel  rather  than  a  single
> arbitrator.   The **Parties** agree to follow the Commercial
> Arbitration    Rules    of    the    American    Arbitration
> Association,  provided,  however,  that  the  **Parties**  can
> modify  such  procedures  only  if  both  parties  are  in
> written  agreement.    This  Section  8(e)  shall  survive
> termination  of  the  **Authorized  Non-Exclusive  Seller
> Agreement**.[51]

The parties to the BNX Agreement are BNX and Counterclaimants BFM

and  BCM;  Counterclaim-Defendants  Amcrest  and  Accumed  are  not

parties to the BNX Agreement.[52]

---

[50]Counterclaim-Defendants'  Motion  to  Dismiss  and  Compel
Arbitration, Docket Entry No. 36, p. 4.

[51]Exhibit  A  to  Declaration  of  Adam  Ravat,  Exhibit  1  to
Counterclaim-Defendants'  Motion  to  Dismiss  and  Compel  Arbitration,
Docket Entry No. 36-1, p. 11.

[52]<u>Id.</u>  at  4  (stating  that  "[t]his  **Authorized  Non-Exclusive
Seller Agreement ('Agreement')** is between **Bona Fide Masks Corp.** and
**Ball  Chain  Mfg.  Co.,  Inc.**  .  .  .  and  **BNX  CONVERTING  LLC**  .  .  .
(collectively  'the  **Parties**').").    <u>See also</u>  <u>id.</u>  at  12  (signatories
are Ravat on behalf of BNX and Taubner on behalf of BFM and BCM).

By citing ¶ 8(e) of the BNX Agreement Counterclaim-Defendants Amcrest, BNX, and Accumed, have satisfied their burden to show that Counterclaimants BFM and BCM have a valid agreement to arbitrate with BNX.   Although Counterclaim-Defendants admit that BNX, Amcrest, and Accumed are affiliated entities,[53] and contend that the arbitration agreement applies to Amcrest and Accumed "by extension,"[54] Counterclaim-Defendants fail to make any showing that a valid agreement to arbitrate exists between Counterclaimants and Amcrest or Accumed, neither of whom are signatories or parties to the BNX Agreement.   "[A]rbitration agreements apply to non-signatories 'only in rare circumstances,' [and] the question of '[w]ho is actually bound by an agreement is [ultimately] a function of the intent of the parties, as expressed in the terms of the agreement.'" Halliburton, 921 F.3d at 530-31.   Although non-signatories are not categorically barred from enforcing an arbitration agreement, see Arthur Andersen LLP v. Carlisle, 129 S. Ct. 1896, 1902 (2009), Counterclaim-Defendants fail to point to any terms of the BNX Agreement showing that it was intended to benefit Amcrest or Accumed.   See In re Rubiola, 334 S.W.220, 224-225 (Tex. 2011) (analyzing when a non-signatory can compel arbitration).   The court concludes therefore that Counterclaimants have a valid agreement to arbitrate with BNX, but not with Amcrest or Accumed.

---

[53]Counterclaim-Defendant Counterclaimants Reply, Affirmative Defenses, and Counterclaims, Docket Entry No. 39, p. 9 ¶ 39.

[54]Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration, Docket Entry No. 36, p. 12.

    (b)   The Seventh, But Not the First, Second or Third, Counterclaims Fall Within the Scope of the Agreement

The BNX Agreement authorizes Counterclaimants to purchase BNX products directly from BNX as "Resellers," _i.e._, entities "who sell[] to an end user for a profit, in their own name, or as an authorized dealer of BNX," and "Retailers," _i.e._, entities "who sell[], suppl[y], or offer[] consumer products for sale directly to consumers."[55]  The first, second, third, and seventh counterclaims are for false advertising and trademark infringement in violation of the Lanham Act, and unfair competition and abuse of process in violation of Texas law, respectively.  Counterclaimants argue that these counterclaims do not fall within the scope of the BNX Agreement because they do not arise from an alleged breach of the that agreement,[56] and because the

> the scope of the arbitration clause in the BNX Agreement is not "broad" but rather is specifically limited to disputes involving the underlying agreement itself. . . This is an agreement to arbitrate claims between Defendants and BNX arising out of the performance of the parties under the BNX Agreement — an agreement under which rights, and, in turn, obligations, were granted to Defendants.[57]

---

[55]Exhibit A to Declaration of Adam Ravat, Exhibit 1 to Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration, Docket Entry No. 36-1, pp. 4 and 6.

[56]Defendants' Opposition to Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration, Docket Entry No. 48, pp. 10-11.

[57]Id. at 11-12 (emphasis in the original).

Determining whether a dispute falls within the scope of a valid arbitration agreement requires the court to characterize the arbitration agreement as "broad" or "narrow." See Hornbeck Offshore, 981 F.2d at 754. A narrow provision requires the dispute to arise out of the contract and relate to the parties' performance of the contract; a broad provision allows the arbitration agreement to "embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." Pennzoil, 139 F.3d at 1067. Because the arbitration provision in the BNX Agreement provides that "**any disputes** will be resolved by arbitration,"[58] it is a "broad" provision, and is not — as Counterclaimants' argue — limited to disputes "arising out of the performance of the parties under the BNX Agreement."[59] "With . . . a broad arbitration clause, it is only necessary that the dispute 'touch' matters covered by the [contract] to be arbitrable." Id. at 1068. See also Matter of Amberson, 54 F.4th 240, 266 (5th Cir. 2022) ("Under Texas law, a claim is within the scope of an arbitration agreement 'if the facts alleged "touch matters" that are covered by, have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined"

---

[58]Exhibit A to Declaration of Adam Ravat, Exhibit 1 to Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration, Docket Entry No. 36-1, p. 11 (emphasis added).

[59]Defendants' Opposition to Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration, Docket Entry No. 48, p. 11.

with the contract that contains the arbitration agreement.'") (citations omitted)). Doubts about whether a dispute falls within the scope of an arbitration agreement are resolved in favor of arbitration. <u>Pennzoil</u>, 139 F.3d at 1067. <u>See also</u> <u>Matter of Amberson</u>, 54 F.4th at 266 ("Texas courts are to find that a claim falls within the scope of the arbitration agreement "<u>unless it can be said with positive assurance</u> that an arbitration clause is <u>not</u> susceptible of an interpretation which would cover the dispute at issue.")(emphasis in original) (citations omitted)). To determine whether a claim falls within the scope of an agreement, "courts must 'focus on the factual allegations of the complaint, rather than the legal causes of action asserted.'" <u>In re Rubiola</u>, 334 S.W.3d at 225 (quoting <u>Prudential Securities Inc. v. Marshall</u>, 909 S.W.2d 896, 899 (Tex. 1995) (per curiam)).

### (1)   The First Counterclaim for False Advertising Does Not Fall Within the Scope of the Agreement

Counterclaimants allege that "[t]he claims and comparisons made by Counterclaim-Defendants in the False KN95 Mask Comparison Claim are false, impliedly false, and misleading and violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)."[60]   The factual allegations underlying this claim are that

---

[60]Defendants' Answer, Affirmative Defenses, and Counterclaims, Docket Entry No. 21, p. 33 ¶ 107.

> Accumed posts a video review of Counterclaimants'
> Certified POWECOM Mask Products on a YouTube channel. .
> . [that] criticizes the physical characteristics and the
> performance of the Certified POWECOM Mask Products.
> Accumed, relying on the test results for only one of the
> three masks tested, falsely or misleadingly, claims that
> the Certified POWECOM Mask Products are "still passing,
> but on the lower side compared to other KN(% that we
> tested[;]"[61]

that "Accumed, without disclosing its relationship to BNX, . . .

purports to review BNX products on the Testing Comparison Site,"[62]

and that

> [t]he BNX products have received the highest ratings from
> Accumed of all KN95 masks tested, including
> Counterclaimants' Certified POWECOM Mask Products . . .
> Accumed, and — by extension — Amcrest and BNX, falsely or
> misleadingly award themselves 9/10 rankings on
> purportedly objective testing of attributes such as
> "Comfort," "Fit," and "Construction Quality" (the "False
> KN95 Mask Comparison Claim").[63]

Counterclaimants seek

> a preliminary and permanent injunction ordering that
> Counterclaim-Defendants . . . refrain from directly or
> indirectly using in commerce:
>
> 1.   the False KN95 Mask Comparison Claim;
>
> 2.   any claim, statement, or comparison that
>      states or communicates that BNX KN95 masks are
>      superior to POWECOM KN95 Masks.[64]

---

[61]Id. at 25 ¶ 46.

[62]Id. at 25 ¶ 48.

[63]Id. ¶ 49.

[64]Id. at 38.

To prevail on their claim of false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Counterclaimants must show

> (1) A false or misleading statement of fact about a product; (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) The deception is material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

Pizza Hut, Inc. v. Papa John's International, Inc., 227 F.3d 489, 495 (5th Cir. 2000), cert. denied, 121 S. Ct. 1355 (2001).

Although the factual allegations underlying the false advertising counterclaim mention BNX branded masks, the statements alleged to be false are Counterclaim-Defendants' statements about POWECOM mask products. The BNX Agreement is directed to Counterclaimants' rights to offer and sell BNX mask products; it neither mentions POWECOM mask products nor addresses Counterclaim-Defendants' advertising of BNX mask products. The mere mention of BNX mask products in the factual allegations underlying this counterclaim is not enough to connect, relate, or touch upon the BNX Agreement. Matter of Amberson, 54 F.4th at 266. The court therefore concludes that the first counterclaim for false advertising does not fall within the scope of the BNX Agreement's arbitration provision. Accordingly, Counterclaim-Defendants' motion to compel arbitration of the false advertising counterclaim will be denied.

### (2)   The Second Counterclaim for Trademark Infringement Does Not Fall Within the Scope of the Agreement

Counterclaimants allege that they

> own all rights, title, and interest in and to the POWECOM Trademark in the United States and have the exclusive right to use the POWECOM Trademark in the United States in connection with the Certified POWECOM Mask Products.
>
> The use of the POWECOM Trademark made by Counterclaimants, in the Claimed Copyrights, and in connection with the advertising, offering for sale, and sale of products other than Certified POWECOM Mask Products, violate Section 32 of the Lanham Act, 15 U.S.C. ¶ 1114.[65]

The factual allegations underlying this claim are that Counterclaimants and their predecessors-in-interest have long marketed and sold face masks and other PPE under the POWECOM Trademark, that BCM has registered the POWECOM Trademark with the United States Patent and Trademark Office under U.S. Trademark Reg. No. 6,003,980,[66] and that BFM has been and is the exclusive United States distributor of POWECOM Mask Products.[67]

To prevail on their claim of trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114(1)), Counterclaimants must show (1) they possess valid trademarks; and (2) Counterclaim-Defendants' use of their valid trademarks creates a likelihood of confusion as to source, affiliation, or sponsorship.  Nola Spice Designs, L.L.C.

---

[65]Id. at 34 ¶¶ 111-12.

[66]Id. at 17-18 ¶¶ 10-13.

[67]Id. at 19 ¶ 16.

-28-

v. Haydel Enterprises, Inc., 783 F.3d 527, 536 (5th Cir. 2015)
(citing National Business Forms & Printing, Inc. v. Ford Motor Co.,
671 F.3d 526, 532 (5th Cir. 2012)).

Neither the facts alleged in support of the trademark
infringement counterclaim, nor the elements that Counterclaimants'
must prove to prevail on that claim bear any connection or relation
to BNX, BNX-branded products, or the BNX Agreement, which does not
mention POWECOM-branded products.  Counterclaim-Defendants fail
even to argue that the factual allegations underlying this
counterclaim connect, relate, or touch upon the BNX Agreement.
Accordingly, Counterclaim-Defendants' motion to compel arbitration
of the trademark infringement counterclaim will be denied.


### (3)  The Third Counterclaim for Unfair Competition Does Not Fall Within the Scope of the Agreement

Based on the same fact that underlie the counterclaim for
trademark infringement, Counterclaimants allege that

> Counterclaim-Defendants   in   competition   with
> Counterclaimants have used the POWECOM Trademark owned by
> Counterclaimants.

> Counterclaim-Defendants use of the POWECOM Trademark
> was done in such a manner to deceive the public,
> constituting unfair competition under the common law of
> the State of Texas.[68]

"Unfair competition under Texas law 'is the umbrella for all
statutory and nonstatutory causes of action arising out of business

_____

[68]Id. at 35 ¶¶ 117-18.

conduct which is contrary to honest practice in industrial or commercial matters.'" <u>Taylor Publishing Co. v. Jostens, Inc.</u>, 216 F.3d 465, 486 (5th Cir. 2000) (quoting <u>American Heritage Life Insurance Co. v. Heritage Life Insurance Co.</u>, 494 F.2d 3, 14 (5th Cir. 1974)). "The tort requires that the plaintiff show an illegal act by the defendant interfered with the plaintiff's ability to conduct its business." <u>Id.</u> "Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort." <u>Id.</u>

Neither the facts alleged in support of the counterclaim for unfair competition, nor the elements that Counterclaimants' must prove to prevail on that claim bear any connection or relation to BNX, BNX-branded products, or the BNX Agreement, which does not mention POWECOM branded products. Counterclaim-Defendants fail even to argue that the factual allegations underlying this counterclaim connect, relate, or touch upon the BNX Agreement. Accordingly, Counterclaim-Defendants' motion to compel arbitration of the trademark infringement counterclaim will be denied.


### (4)   The Seventh Counterclaim for Abuse of Process Falls Within the Scope of the Agreement

Counterclaimants allege

[u]pon information and belief, Amcrest included allegations against Counterclaimants for the purpose of harming Counterclaimants' reputation and harming their ability to conduct business.

-30-

> Upon information and belief, Amcrest has abused the court's process not for the purpose of seeking justice, but for the sole purpose of causing harm to Counterclaimants.[69]

The factual allegations underlying this claim are that in 2021 and continuing into 2022 Counterclaim-Defendants pursued a relationship with Counterclaimants because by then Counterclaimants had grown to be one of the largest distributors of KN95 masks in the United States,[70] and that on July 22, 2022, Counterclaimants entered the BNX Agreement.[71]  Counterclaimants allege that on August 24, 2022, and again on October 2, 2022, Ravat emailed Taubner inquiring "any orders?"[72]  Counterclaimants allege that on October 31, 2022, Amcrest initiated this action for Copyright Infringement and identified for the first time the alleged Copyright Registrations.[73] Counterclaimants allege that Amcrest is pursuing this action for the ulterior motive of compelling them to purchase products under the BNX Agreement.[74]

The essential elements of a claim for abuse of process under Texas law are (1) "an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process;"

---

[69]Id. at 37 ¶¶ 137-38.

[70]Id. at 31 ¶¶ 89-91.

[71]Id. at 31-32 ¶ 92.

[72]Id. at 32 ¶¶ 95-96.

[73]Id. ¶ 98.

[74]Id. at 32-33 ¶¶ 99-105.

(2) "an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process;" and (3) damages resulting from "such illegal act." Cooper v. Trent, 551 S.W.3d 325, 333-34 (Tex. App. – Houston [14th Dist.] 2018, pet. denied). Critically, "abuse of process consists not in the filing and maintenance of a civil action, but rather in the perversion of some process issued in the suit after its issuance." Detenbeck v. Koester, 886 S.W.2d 477, 481 (Tex. App. – Houston [1st Dist.] 1994, writ dismissed) (citation omitted).

Counterclaim-Defendants argue that the abuse of process counterclaim is subject to arbitration because it "is based upon and revolves largely around the [BNX] Agreement."[75] Counterclaim-Defendants argue that

> [u]ndeniably, there is a scope of overlap and coverage that the Arbitration Agreement has with the issues in the lawsuit and that scope of overlap and coverage is significant as Counterclaimants explain in their opposition (Doc 51) to the motion for Judgment on the Pleadings (Doc 40):
>
> > . . . Counterclaimants have alleged that the instant litigation was brought for an improper purpose: unable to consummate desired sales of BNX-branded products under the BNX Agreement, Counterclaim-Defendants now assert rights in invalid copyrights in an attempt to compel Counterclaimants to do a collateral thing (purchase products under the BNX Agreement) which they would otherwise not be compelled to do. (See Doc. 21 at [33 ¶ 105].[76]

---

[75]Counterclaim-Defendants' Reply in Support of Motion to Dismiss and Compel Arbitration, Docket Entry No. 52, p. 3.

[76]Id. (quoting Bona Fide Masks Corp. and Ball Chain
(continued...)

Counterclaimants' abuse of process counterclaim is based on allegations that Counterclaim-Defendants are asserting rights in invalid copyrights in an attempt to compel them to purchase products under the BNX Agreement, which they would otherwise not be compelled to do.   These allegations not only mention the BNX Agreement, but also raise the need to determine whether the terms of that agreement required Counterclaimants to purchase BNX-branded products.   The court therefore concludes that the factual allegations made in support of the abuse of process counterclaim relate to and touch upon "the subject matter of the agreement containing the arbitration provision."   Matter of Amberson, 54 F.4th at 266.   Counterclaim-Defendants' motion to compel arbitration of the abuse of process counterclaim will be granted.

### III. __The Motions to Dismiss for Improper Joinder of Parties__

Counterclaim-Defendants seek dismissal of the first counterclaim for false advertising as asserted against Amcrest for misjoinder under Rule 21.[77]   Counterclaim-Defendants also seek

---

[76](...continued)
Manufacturing Co., Inc.'s Opposition to Counterclaim-Defendants' Motion for Judgment on the Pleadings (Doc. 40) ("Counterclaimants' Opposition to Motion for Judgment on the Pleadings"), Docket Entry No. 51, pp. 11-12).

[77]Counterclaim-Defendants' Motion to Dismiss Improper Party, Docket Entry No. 38.   See also Counterclaim-Defendants' Reply to Counterclaimants' Opposition (Doc 49) to Counterclaim-Defendants' (1) Motion to Dismiss [Fourth, Fifth, and Sixth Counterclaims (continued...)

dismissal of the fourth, fifth, and sixth counterclaims asserted against BNX and Accumed for lack of standing under Federal Rule of Civil Procedure 12(b)(1) or for misjoinder of parties under Rule 21.[78] Counterclaimants respond upon information and belief that Amcrest, BNX, and Accumed are interrelated and, therefore, are each properly named parties.[79] Counterclaim-Defendants reply that Counterclaimants have no standing to pursue the challenged claims.[80]

### A.   Applicable Law

1.   Standing

Standing questions "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 95 S.Ct. 2197, 2205 (1975). "[S]tanding

---

[77](...continued)
Against BNX and Accumed] under Rule 12(b)(1) or Misjoinder of Parties under F.R.Civ.P. Rule 21 (Doc. 37) and (2) Motion to Dismiss [First Counterclaim against] Improper Party [Amcrest] under F.R.Civ.P. Rule 21 (Doc 38) ("Counterclaim-Defendants' Reply in Support of Motions to Dismiss Alleged Improper Parties"), Docket Entry No. 54, pp. 5-7.

[78]Counterclaim-Defendants' Motion to Dismiss for Misjoinder, Docket Entry No. 37.  See also Counterclaim-Defendants' Reply in Support of Motions to Dismiss Alleged Improper Parties, Docket Entry No. 54, pp. 2-4.

[79]Bona Fide Masks Corp. and Ball Chain Manufacturing Co., Inc.'s Opposition to Counterclaim-Defendants' Motion to Dismiss Alleged Improper Parties (Docs. 37 and 38) ("Counterclaimants' Opposition to Motions to Dismiss Alleged Improper Parties"), Docket Entry No. 49, p. 5.

[80]See also Counterclaim-Defendants' Reply in Support of Motions to Dismiss Alleged Improper Parties, Docket Entry No. 54, p. 2.

is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136 (1992). "Standing requires, at a minimum, three elements: injury in fact, a 'fairly traceable' causal link between that injury and the defendant's conduct, and the likelihood that the injury will be 'redressed by a favorable decision.'" Cadle Co. v. Neubauer, 562 F.3d 369, 371 (5th Cir. 2009) (quoting Lujan, 112 S.Ct. at 2136). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Town of Chester, New York v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650 (2017) (quoting Davis v. Federal Election Commission, 128 S. Ct. 2759, 2769 (2008)). A defect in Article III standing is a defect in subject-matter jurisdiction. See Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("dismissal for lack of constitutional standing . . . should be granted under Rule 12(b)(1)"). "Standing is a question of law" for the court to decide. Baker v. Carr, 82 S. Ct. 691, 703 (1962). See also Texas v. United States, 50 F.4th 498, 513 (5th Cir. 2022)(same).


  2.  Federal Rule of Civil Procedure 21

Rule 21 governing misjoinder and nonjoinder of parties states that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." While the court may add or drop

-35-

a party under Rule 21, "[m]isjoinder of parties is not a ground for dismissing an action."  Fed. R. Civ. P. 21.  See also Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 522 (5th Cir. 2010)(per curiam) (citing Sabolsky v. Budzanoski, 457 F.2d 1245, 1249 (3d Cir.), cert. denied, 93 S. Ct. 65 (1972) ("[t]he proper remedy in case of misjoinder is to grant severance or dismissal to the improper party if it will not prejudice any substantial right.").  Because Rule 21 does not provide standards for district courts to determine if parties are misjoined, courts look to Rule 20 for guidance.  Id. at 521.  In pertinent part Rule 20(a)(2) states that

> [p]ersons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

Courts have described Rule 20 as creating a two-prong test, allowing joinder of defendants when (1) the claims against them "arise out of the 'same transaction, occurrence, or series of transactions or occurrences' and when (2) there is at least one common question of law or fact linking all claims."  Acevedo, 600 F.3d at 521.  "However, even if this test is satisfied, district courts have the discretion to refuse joinder in the interest of

-36-

avoiding prejudice and delay, . . . ensuring judicial economy, . . . or safeguarding principles of fundamental fairness." <u>Id.</u> (internal citations omitted).   Permissive joinder should be liberally construed in the interest of convenience and judicial economy because under the Federal Rules of Civil Procedure "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; [and] joinder of claims, parties, and remedies is strongly encouraged." <u>United Mine Workers of America v. Gibbs</u>, 86 S. Ct. 1130, 1138 (1966).   As the movants, Counterclaim-Defendants bear the burden in seeking relief under Rule 21.   <u>See</u> <u>Aspen Technology, Inc. v. Kunt</u>, No. 4:10-cv-1127, 2011 WL 86556, at *3 (S.D. Tex. January 10, 2011)).

## B.   Amcrest Is Not Misjoined for the First Counterclaim for False Advertising

Counterclaim-Defendants argue that the false advertising counterclaim asserted against Amcrest should be dismissed for misjoinder under Rule 21 because the factual allegations underlying this counterclaim refer only to conduct and activities of Accumed,[81] and fail to allege "any conduct or activity on the part of Amcrest."[82]   Counterclaim-Defendants cite <u>Pizza Hut</u>, 227 F.3d at

---

[81]Counterclaim-Defendants' Motion to Dismiss Improper Party, Docket Entry No. 38, pp. 4-7.

[82]<u>Id.</u> at 6.   <u>See also</u> Counterclaim-Defendants' Reply in Support of Motion to Dismiss Alleged Improper Parties, Docket Entry No. 54, pp. 5-7.

495, for the elements of false advertising under § 43(a) of the Lanham Act,[83] and the Declaration of Adam Ravat.   The factual allegations underlying this claim are described in detail above in § III.B.2(b)(1).   In pertinent part Ravat states that he is an Amcrest Director, Amcrest is an innovation company that does not advertise or sell products, and Amcrest has not engaged in any conduct with respect to the False KN95 Mask Comparison Claim.[84]

Asserting that contrary to Ravat's declarations that Amcrest is an innovation company and not in the business of advertising, offering for sale, or sale of products, Amcrest owns the registration for the Accumed trademark in the United States,[85] and that all three Counterclaim-Defendants have filed their corporate disclosure statements under seal,[86] Counterclaimants argue that

---

[83]See above, § III.B.2(b)(1).

[84]Counterclaim-Defendants' Motion to Dismiss Improper Party, Docket Entry No. 38, p. 6 (citing Declaration of Adam Ravat in Support of Counterclaim-Defendants' Motion to Dismiss Improper Party under F.R.Civ.P. Rule 21 ("Ravat Declaration"), Exhibit 1 to Counterclaim-Defendants' Motion to Dismiss for Misjoinder, Docket Entry No. 38-1, ¶¶ 1, 6-7).

[85]Counterclaimants' Opposition to Motions to Dismiss Improper Parties, Docket Entry No. 49, p. 9 (citing U.S. Trademark Registration Serial No. 90353837 (Registered May 4, 2022), Exhibit 2, Docket Entry No. 49-2).   Courts have approved of taking judicial notice of such records.   See e.g., Savage Tavern, Inc. v. Signature Stag, LLC, 589 F. Supp. 3d 624, 644 & n. 3 (N.D. Tex. 2022) (citing Brown v. Bridges, 3:12-CV-4947-P, 2016 WL 3660666, at *2 (N.D. Tex. Jan. 26, 2016) (taking judicial notice of trademark registration documents as public records under Federal Rule of Evidence 201), aff'd, 692 F. App'x 215 (5th Cir. 2017) (per curiam)).

[86]Id. at 5.

> [g]iven these facts, at this early stage in the case,
> before any discovery has commenced, [they] should not be
> foreclosed from pursuing in the litigation . . . the
> parties who directed or controlled the false advertising
> at issue in the First Counterclaim.  Counterclaimants
> have a good faith basis to believe that the proper
> parties have been identified in the counterclaims, and
> that this Court has jurisdiction over the same.[87]

Counterclaim-Defendants do not dispute that Counterclaimants are able to maintain a claim for false advertising against Accumed, or that the false advertising counterclaim asserted against Amcrest arises out of the "same transaction, occurrence, or series of transactions or occurrences," and involves at least one question of law or fact common to the false advertising counterclaim asserted against Accumed.  Instead, based on Ravat's declarations that Amcrest is an innovation company not in the business of advertising, offering for sale, or sale of products, and that Amcrest has not engaged in any conduct with respect to the False KN95 Mask Comparison Claim, Counterclaim-Defendants argue that the false advertising counterclaim asserted against Amcrest should be dismissed because Amcrest cannot be held liable for this claim.[88] Ravat's Declarations that Amcrest is an innovation company and not in the business of advertising, offering for sale, or sale of products, is contradicted by the description of Amcrest's business in the Amended Complaint for Copyright Infringement filed by Amcrest.  There Amcrest states that

---

[87]*Id.*

[88]Counterclaim-Defendants' Motion to Dismiss Improper Party, Docket Entry No. 38, p. 6.  See also Counterclaim-Defendants' Reply in Support of Motions to Dismiss Alleged Improper Parties, Docket Entry No. 54, pp. 5-7.

> [a]mong the many business product and service offerings
> Amcrest . . . makes available to its customers is a
> respirator mask. . . To differentiate itself in the very
> competitive sale of respirator masks business, Plaintiff
> Amcrest . . . commissioned a highly reputable commercial
> designer . . . to create a different and unique image
> rendition of a respirator mask for us in marketing its
> respirator mask line of business.[89]

Moreover, in their jointly filed answer to the counterclaims,
"Counterclaim-Defendants admit that they are affiliate companies
and that their respective affiliations invoke certain
relationships, interests and control with respect to the respective
affiliations."[90]  Although Counterclaim-Defendants deny that Accumed
features Certified POWECOM Mask Products on the Test Comparison
Site, they admit that Accumed posts a video review of
Counterclaimants' Certified POWECOM Mask Products on a YouTube
channel,[91] and that Amcrest owns the trademark registration for
Accumed in the United States.[92]

Because Ravat's declarations that Amcrest is not in the
business of advertising or selling products conflicts with both the
allegations that Amcrest has made in the First Amended Complaint
for Copyright Infringement filed in this action and the admissions

---

[89]Amended Complaint for Copyright Infringement, Docket Entry
No. 9, p. 3 ¶ 12.

[90]Counterclaim-Defendant Counterclaimants Reply, Affirmative
Defenses, and Counterclaims, Docket Entry No. 39, p. 9 ¶ 39.

[91]Id. at 11 ¶¶ 45-46.

[92]Counterclaim-Defendants' Reply in Support of Motions to
Dismiss Alleged Improper Parties, Docket Entry No. 54, pp. 5-6.

that Amcrest has filed jointly with Accumed, Ravat's declarations constitute — at best — denials of the false advertising counterclaim, not an evidentiary basis for concluding that Amcrest cannot be held liable for false advertising. Counterclaim-Defendants cite no cases in which courts have granted a motion to dismiss for misjoinder based on self-serving statements made by a party representative. Instead, Counterclaim-Defendants cite only to Maes v. Lowe's Home Centers LLC, No. EP-17-CV-00107-FM, 2017 WL 10820162 (W.D. Tex. September 13, 2017), in which the court granted a motion to dismiss for improper joinder that was unopposed. Id. at *1 ("Defendant informs the court that the Motion is unopposed.").

Because Counterclaim-Defendants fail to argue either that the false advertising counterclaim asserted against Amcrest does not arise out of the same series of transactions or occurrences as the false advertising counterclaims asserted against Accumed, or that there is no common nucleus of operative facts or law in the false advertising counterclaims asserted against all three Counterclaim-Defendants, the court concludes that for purposes of the false advertising counterclaim, Amcrest is not misjoined under Rule 20. Accordingly, Counterclaim-Defendants' Motion to Dismiss for improper joinder under Rule 21 the first counterclaim for false advertising asserted against Amcrest will be denied. See Acevedo, 600 F.3d at 521; and Gibbs, 86 S. Ct. at 1138.

-41-

C.   **BNX and Accumed Are Not Improperly Joined for the Fourth, Fifth, and Sixth Copyright-Related Counterclaims**

The fourth counterclaim is a claim for declaratory judgment in which Counterclaimants allege that

> [a] justiciable controversy exists between Counterclaimants and Counterclaim-Defendants regarding, <u>inter alia</u>, the invalidity of the Claimed Copyrights.
>
> . . .
>
> To the extent they have any "original works of authorship," . . . the Claimed Copyrights . . . include useful articles not protected by copyright law.
>
> Counterclaimants are entitled to a declaration that the Claimed Copyrights are invalid for failure to satisfy one or more of the conditions for copyrightability in Title 17 of the United States Code.[93]

The fifth counterclaim is a claim is for cancellation of copyrights in which Counterclaimants allege that

> [t]he Claimed Copyrights are invalid because they do not comprise "original works of authorship" under 17 U.S.C. § 102(a).
>
> . . .
>
> Amcrest willfully misstated or failed to state a fact that, if known, might have caused the Copyright Office to reject the copyright applications which matured into Registration Nos. VA0002238127 and VA0002238128.
>
> Pursuant to 17 U.S.C. § 411(b)(2), it is respectfully requested that this Court "request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration."
>
> The Copyright Registrations are properly cancelled by the Copyright Office because the work does not

---

[93]Defendants' Answer, Affirmative Defenses, and Counterclaims, Docket Entry No. 21, p. 35 ¶¶ 122-25.

constitute copyrightable subject matter or fails to satisfy the other legal and formal requirements for obtaining copyright under 37 CFR § 201.7.[94]

The sixth counterclaim is a claim for declaratory judgment in which Counterclaimants allege that

> [a] justiciable controversy exists between Counterclaimants and Counterclaim-Defendants regarding, inter alia, the scope of the Claimed Copyrights.

> Counterclaim-Defendants in the Amended Complaint and in representations to third parties have asserted rights in the Claimed Copyrights beyond the rights, if any, conferred by the Claimed Copyrights.

> Counterclaimants are entitled to a declaration that Counterclaim-Defendants' rights, if any, in the Claimed Copyrights are limited to the Actual VA0002238127 Deposit Copy and the Actual VA0002238128 Deposit Copy.[95]

Counterclaim-Defendants argue that the fourth, fifth, and sixth counterclaims for declaratory judgment and cancellation of copyrights as asserted against BNX and Accumed should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because Counterclaimants lack standing to pursue these claims against BNX and Accumed, and alternatively, seek dismissal of these counterclaims against BNX and Accumed for improper joinder under Rule 21.[96]  Without disputing that Counterclaimants have standing to assert these counterclaims against Amcrest, Counterclaim-Defendants argue that Counterclaimants have no standing to assert

---

[94]Id. at 36 ¶¶ 127, 129-31.

[95]Id. at 36-37 ¶¶ 133-35.

[96]Counterclaim-Defendants' Motion to Dismiss for Misjoinder, Docket Entry No. 37, p. 6.

these counterclaims against BNX or Accumed because Amcrest owns the
Claimed Copyrights, because neither BNX nor Accumed holds ownership
or exclusive rights to the Claimed Copyrights and, therefore,
neither BNX nor Accumed can hold Counterclaimants liable for
violation of the Copyright Act with respect to the Claimed
Copyrights.[97] In support of this argument, Counterclaim-Defendants
cite Ravat's Declaration for stating in pertinent part that he is
an Amcrest Director, Amcrest owns the Claimed Copyrights, and
neither BNX nor Accumed holds any ownership or exclusive rights to
the Claimed Copyrights.[98]

Counterclaimants respond that they have alleged that
Counterclaim-Defendants are interrelated entities that share common
interest or control such that they may each be held liable for the
fourth, fifth, and sixth counterclaims for declaratory judgment and
cancellation of copyrights.[99]

---

[97]Id.

[98]Id. at 10 (citing Declaration of Adam Ravat in Support of
Counterclaim-Defendants' Motion to Dismiss Under Rule 12(B)(1) or
Misjoinder of Parties under F.R.Civ.P. Rule 21, Exhibit 1 to
Counterclaim-Defendants' Motion to Dismiss for Misjoinder, Docket
Entry No. 37-1, ¶¶ 3, 8-10).  See also Counterclaim-Defendants'
Reply in Support of Motion to Dismiss Alleged Improper Parties,
Docket Entry No. 54, pp. 2-4.

[99]Counterclaimants' Opposition to Motions to Dismiss Alleged
Improper Parties, Docket Entry No. 49, p. 5.

1. Counterclaimants Have Standing to Assert Fourth, Fifth, and Sixth Counterclaims

Standing requires injury in fact, causation, and redressability. Cadle, 562 F.3d at 371 (quoting Lujan, 112 S. Ct. at 2136). Counterclaimants have alleged injury in fact with respect to their copyright-related counterclaims because they have been sued for violation of the Copyright Act. Although Counterclaimants have only been sued by Amcrest, Counterclaimants have alleged causation with respect to BNX and Accumed because they have alleged upon information and belief that "Amcrest . . . BNX and Accumed are related entities, and/or share common interest or control."[100] Counterclaimants have alleged redressability because declaratory judgment is an appropriate means of determining intellectual property rights when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 771 (2007). Counterclaimants' allegations meet the MedImmune requirements because Amcrest has already sued Counterclaimants thus creating a direct adversarial dispute over who can publish Claimed Copyrighted works. If their counterclaims for declaratory judgment or for cancellation of the Claimed Coyrights are granted, Counterclaimants could not be held liable for infringement. Accordingly, the court concludes that Counterclaimants have sufficiently alleged injury, causation, and redressability in

---

[100]Defendants' Answer, Affirmative Defenses, and Counterclaims, Docket Entry No. 21, p. 24 ¶ 39.

support of their fourth, fifth, and sixth copyright-related counterclaims. Whether Counterclaimants may pursue these counterclaims against BNX and Accumed does not implicate Constitutional standing but, instead, joinder.

### 2. BNX and Accumed Are Not Improperly Joined

Without disputing that Counterclaimants may pursue their copyright-related counterclaims against Amcrest, Counterclaim-Defendants argue that these counterclaims asserted against BNX and Accumed should be dismissed under Rule 21 because BNX and Accumed are improperly joined. In support of this argument Counterclaim-Defendants do not argue that Counterclaimants have failed to state a claim that may be granted against either BNX or Accumed. Instead, Counterclaim-Defendants cite the Ravat Declaration for stating that Amcrest owns the Claimed Copyrights, and that neither BNX nor Accumed hold any rights or exclusive licenses to them. They argue, therefore, that neither BNX nor Accumed can sue Counterclaimants for infringement of the Claimed Copyrights.[101] Since, however, in their jointly filed answer to the counterclaims, "Counterclaim-Defendants admit that they are affiliate companies and that their respective affiliations invoke certain relationships, interests and control with respect to the respective affiliations,"[102] Ravat's declarations do not establish that BNX or Accumed is improperly joined for purposes of the copyright-related

---

[101]Counterclaim-Defendants' Motion to Dismiss for Misjoinder, Docket Entry No. 37, pp. 10 and 12.

[102]Counterclaim-Defendant Counterclaimants Reply, Affirmative Defenses, and Counterclaims, Docket Entry No. 39, p. 9 ¶ 39.

counterclaims.   Moreover,   common   control   is   evidenced   by
Counterclaim-Defendants' admission that Amcrest owns the Accumed
trademark, by Ravat's signature of the BNX Agreement as CEO, and by
Ravat's declarations that he is a director of both Amcrest and BNX.
The court therefore concludes that for purposes of the copyright-
related counterclaims, Amcrest, BNX, and Accumed are not improperly
joined under Rule 20.  Accordingly, Counterclaim-Defendants' Motion
to Dismiss the fourth, fifth, and sixth counterclaims asserted
against BNX and Accumed for improper joinder under Rule 21 will be
denied. See Acevedo, 600 F.3d at 521; and Gibbs, 86 S. Ct. at 1138.


**IV.   The Motion for Judgment on the Pleadings**

Counterclaim-Defendants seek judgment on the pleadings
pursuant to Rule 12(c) on the first and seventh counterclaims for
false   advertising   and   abuse   of   process   arguing   that
Counterclaimants cannot adduce sufficient evidence to establish the
essential elements of these counterclaims.[103]  Counterclaimants urge
the court to deny the motion.[104]

---

[103]Counterclaim-Defendants'   Motion   for   Judgment   on   the
Pleadings, Docket Entry No. 40, pp. 7-9.  See also Counterclaim-
Defendants'  Reply  to  Bona  Fide  Masks  Corp.  and  Ball  Chain
Manufacturing Co., Inc.'s Opposition (Doc 51) to Counterclaim-
Defendants' Motion for Judgment on the Pleadings (Doc. 40)
("Counterclaim-Defendants' Reply in Support of Motion for Judgment
on the Pleadings"), Docket Entry No. 53, pp. 2-5.

[104]Bona  Fide  Masks  Corp.  and  Ball  Chain  Manufacturing  Co.,
Inc.'s Opposition to Counterclaim-Defendants' Motion for Judgment
(continued...)

## A.    Applicable Law

"A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd., 914 F.2d 74, 76 (5th Cir. 1990) (per curiam).  Such a motion is useful when all material allegations of facts are admitted in the pleadings and only questions of law remain.  Id.  "The standard for deciding a Rule 12(c) motion is the same standard used for deciding motions to dismiss pursuant to Rule 12(b)(6)."  Q Clothier New Orleans, L.L.C. v. Twin city Fire Insurance Co., 29 F.4th 252, 256 (5th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  When considering a motion to dismiss based on Rule 12(b)(6), "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)).

---

[104](...continued)
on the Pleadings (Doc. 40) ("Counterclaimants' Opposition to Motion for Judgment on the Pleadings"), Docket Entry No. 51, p. 5.

**B.    Application of the Law to the Facts**

1.    <u>The False Advertising Counterclaim Will Not Be Dismissed</u>

Counterclaim-Defendants argue that the false advertising counterclaim should be dismissed on the pleadings because Counterclaimants cannot adduce sufficient evidence to establish that the statements about which they complain are either literally false or likely to mislead and confuse consumers.[105] Counterclaim-Defendants cite the declaration of their attorney, Paul Juhasz, attached to which are extracts from the allegedly false or misleading advertisements, which Juhasz states are, to his knowledge, accurate.[106]

Counterclaimants respond that they have

sufficiently alleged that Counterclaim-Defendants have falsely or misleadingly claimed that Counterclaimants' POWECOM Mask Products are inferior ("still passing, but on the lower side compared to other KN95 that we tested") and thereupon proceeded to award their own masks the highest rankings based upon rigged attributes.  It is further alleged that Counterclaim-Defendants have purposely failed to explain the relationship between Accumed and the BNX branded masks of which it speaks so highly. . .

Counterclaim-Defendants cite to the <u>statements at issue themselves</u> in a YouTube video to argue <u>their</u> self-serving construction of the statement itself establishes that these claims cannot be false or misleading.  Basing

---

[105]Counterclaim-Defendants' Motion for Judgment on the Pleadings, Docket Entry No. 40, p. 7 (citing <u>Pizza Hut</u>, 227 F.3d at 495).

[106]<u>Id.</u> at 10-22 (citing Declaration of Paul Juhasz, Docket Entry No. 40-1, and Exhibits thereto, Docket Entry No. 40-2).

an opposition on such <u>ipse dixit</u> is nonsensical.  None of these statements are self-authenticating.  To prove these statements true or not misleading would require at least some discovery to determine industry testing standards for mask testing, whether Counterclaim-Defendants complied with these industry standards, whether the statements are actually false, whether the statements are misleading to consumers, and Counterclaim-Defendants' knowledge of the misleading or false nature of these advertisements.[107]

Whether the allegedly false or misleading statements are accurate cannot be resolved on a Rule 12(c) motion for judgment on the pleadings.  Counterclaim-Defendants acknowledge as much by stating "[a] Rule 12(c) motion 'is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'"[108]  Because Counterclaim-Defendants do not dispute that Counterclaimants have alleged facts that, if true, are capable of establishing their false advertising counterclaim but, instead, argue only that Counterclaimants are unable to adduce facts sufficient to prove that counterclaim, the Rule 12(c) motion for judgment on the pleadings as to false advertising will be denied.

_____

[107]Counterclaimants' Opposition to Motion for Judgment on the Pleading, Docket Entry No. 51, p. 10.

[108]Counterclaim-Defendants' Motion for Judgment on the Pleadings, Docket Entry No. 40, p. 6 (quoting <u>Hebert</u>, 914 F.2d at 76).

2.   <u>The Abuse of Process Counterclaim Will Be Dismissed</u>[109]

Counterclaimants allege

[u]pon information and belief, Amcrest included
allegations against Counterclaimants for the purpose of
harming Counterclaimants' reputation and harming their
ability to conduct business.

Upon information and belief, Amcrest has abused the
court's process not for the purpose of seeking justice,
but for the sole purpose of causing harm to
Counterclaimants.[110]

The factual allegations underlying this claim are that in 2021 and

continuing into 2022, Counterclaim-Defendants pursued a

relationship with Counterclaimants,[111] that on July 22, 2022,

Counterclaim-Defendants entered the BNX Agreement with

Counterclaimants,[112] and that on August 24, 2022, and again on

October 2, 2022, Ravat emailed Counterclaimants inquiring "any

orders?"[113]   Based on these factual allegations Counterclaimants

allege that Counterclaim-Defendants filed this action on October

31, 2022, but never attempted to serve the Complaint,[114] filed an

Amended Complaint without investigating the validity of the Claimed

---

[109]Because the court has already concluded above in
§ II.B.2(b)(4) that the seventh counterclaim for abuse of process
asserted against BNX is subject to arbitration, the discussion in
this section pertains only to Amcrest and Accumed.

[110]Defendants' Answer, Affirmative Defenses, and Counterclaims,
Docket Entry No. 21, p. 37 ¶¶ 137-38.

[111]<u>Id.</u> at 31 ¶ 89.

[112]<u>Id.</u> ¶ 92.

[113]<u>Id.</u> at 32 ¶¶ 95-96.

[114]<u>Id.</u> ¶ 99.

Copyrights,[115] failed to disclose the existence of the BNX Agreement in the Amended Complaint,[116] and assert rights in invalid copyrights in an attempt to compel Counterclaimants to do a collateral thing (purchase products under the BNX Agreement) which they would otherwise not be compelled to do.[117]

Counterclaimants respond that

> Counterclaim-Defendants are not pursuing a copyright infringement case — they are attempting to misuse this copyright lawsuit to force Counterclaimants into purchasing masks from BNX. . . Counterclaimants have alleged that the instant litigation was brought for an improper purpose: unable to consummate desired sales of BNX-branded products under the BNX Agreement, Counterclaim-Defendants now assert rights in invalid copyrights in an attempt to compel Counterclaimants to do a collateral thing (purchase products under the BNX Agreement) which they would otherwise not be compelled to do.[118]

To state a claim for abuse of process under Texas law, a party must allege (1) "an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process;" (2) "an ulterior motive or purpose in exercising such illegal, perverted or improper use of the process"; and (3) damages resulting from "such illegal act." Cooper, 551 S.W.3d at 333-34. Critically, "abuse of process consists not in the filing and

---

[115]Id. at 33 ¶ 102.

[116]Id. ¶ 103.

[117]Id. ¶ 105.

[118]Counterclaimants' Opposition to Motion for Judgment on the Pleading, Docket Entry No. 51, pp. 11-12.

maintenance of a civil action, but rather in the perversion of some process issued in the suit after its issuance." Detenbeck, 886 S.W.2d at 481 (emphasis in original). "The focus is on the use of the process once it is properly obtained, not on the motive for originally obtaining the process." Davis v. West, 433 S.W.3d 101, 110 (Tex. App. Houston [1st Dist.] 2014, pet. denied). "The mere procurement or issuance of process with a malicious intent . . . is not actionable; there must be an improper use of the process after its issuance." Detenbeck, 886 S.W.2d at 481. See also Morgan v. Chapman, 969 F.3d 238, 246 (5th Cir. 2020) (citing Hunt v. Baldwin, 68 S.W.3d 117, 129 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (for identifying improper use of process, ulterior motive, and damage to plaintiff as necessary elements of an abuse of process claim based on Texas law)). In Blackstock v. Tatum, 396 S.W.2d 463, 468 (Tex.Civ.App.-Houston 1965, no writ), the court quoting the then-current Restatement of Torts, described the abuse of process inquiry as follows:

> The purpose for which the process is used, once it is issued, is the only thing of importance. . .
>
> . . . Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and

> it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.

Id. at 468.

Counterclaimants allege that Counterclaim-Defendants have engaged in abuse of process by filing and maintaining this action against them.  They allege that Counterclaim-Defendants filed this action on October 31, 2022, but never attempted to serve the Complaint,[119] filed an Amended Complaint without investigating the validity of the Claimed Copyrights,[120] failed to disclose the existence of the BNX Agreement in the Amended Complaint,[121] and assert rights in allegedly invalid copyrights.[122]  But these alleged acts were permissibly taken in maintenance of this action.  Counterclaimants do not allege any acts capable of establishing the perversion of some process issued in this suit after its issuance.  Counterclaimants' abuse of process counterclaim fails because they have failed to allege facts capable of establishing that Counterclaim-Defendants have improperly used the process obtained in this action to obtain a collateral advantage not properly involved in the proceeding itself.  See Detenbeck, 886 S.W.2d at

---

[119]Defendants' Answer, Affirmative Defenses, and Counterclaims, Docket Entry No. 21, p. 32 ¶ 99.

[120]Id. at 33 ¶ 102.

[121]Id. ¶ 103.

[122]Id. ¶ 105.

481 ("The mere procurement or issuance of process with a malicious intent, . . . is not actionable; there must be an improper use of the process after its issuance."). <u>See also</u> <u>Hunt</u>, 68 S.W.3d at 130 ("To maintain a cause of action for abuse of process, it must be established that the process was improperly used <u>after</u> it was issued."). Moreover, Counterclaimants have also failed to allege damages other than those necessarily incident to responding to the First Amended Complaint for Copyright Infringement. Accordingly, Counterclaim-Defendants' motion to dismiss the counterclaim for abuse of process on the pleadings will be granted. <u>See</u> <u>Cantu v.</u> <u>Guerra</u>, No. SA-20-CV-0746-JKP-HJB, 2021 WL 2652933, at *18-19 (W.D. Tex. June 28, 2021)(granting Rule 12(b)(6) motion to dismiss abuse of process claim based on similar allegations of fact).

## V.  <u>Conclusions and Order</u>

For the reasons stated above in § II.A, the court concludes that Counterclaim-Defendants are not entitled to dismissal of the first, second, third, or seventh counterclaims for false advertising, trademark infringement, unfair competition, or abuse of process, respectively, for lack of subject matter jurisdiction under Rule 12(b)(1) or for wrong or improper venue under Rule 12(c). For the reasons stated above in § II.B.2(a), the court concludes that Counterclaim-Defendants have a valid agreement to arbitrate with BNX, but not with Amcrest or Accumed. For the reasons stated above, in § II.B.2(b), the court concludes that the

seventh counterclaim for abuse of process asserted against BNX falls within the scope the valid arbitration agreement, but that the first, second, and third counterclaims for false advertising, trademark infringement, and unfair competition asserted against BNX do not fall within the scope of the arbitration agreement. Counterclaimants are hereby **COMPELLED TO ARBITRATE WITH BNX THEIR SEVENTH COUNTERCLAIM FOR ABUSE OF PROCESS.** Accordingly, Counterclaim-Defendants' Motion to Dismiss and Compel Arbitration under Rule 12(b)(1) or 12(b)(3), Docket Entry No. 36, is **GRANTED in PART** and **DENIED in PART.** Although as stated above in § II.B.1, federal courts are required to stay litigation of claims subject to arbitration on a party's motion, 9 U.S.C. § 3, neither party has moved the court to stay any claims subject to arbitration in this action. Since, moreover, for the reasons stated above in § IV.B.1, the court has concluded that Amcrest and Accumed are entitled to judgment on the pleadings on the abuse of process counterclaim asserted against them, the court will not exercise discretionary authority to stay this or any other claims pending arbitration.

For the reasons explained above in § III.B, the court concludes that Counterclaimants' first counterclaim for false advertising as asserted against Amcrest is not subject to dismissal under Rule 12(b)(6) for lack of standing or for misjoinder under Rule 21. Accordingly, Counterclaim- Defendants' Motion to Dismiss Under Rule 12(b)(1) or Misjoinder of Parties Under F.R.C.P. Rule 21, Docket Entry No. 37, is **DENIED.**

For the reasons explained above in § III.C, the court
concludes that Counterclaimants' copyright-related fourth, fifth,
and sixth counterclaims asserted against BNX and Accumed are not
subject to dismissal under Rule 12(b)(6) for lack of standing or
for misjoinder under Rule 21. Accordingly, Counterclaim-
Defendants' Motion to Dismiss Improper Party under F.R.Civ. P. 21,
Docket Entry No. 38, is **DENIED.**

For the reasons explained above in § IV.B.1, the court
concludes that Counterclaim-Defendants Amcrest and Accumed are not
entitled to judgment on the pleadings under Rule 12(c) for the
false advertising counterclaim, but that they are entitled to
judgment on the pleadings under Rule 12(c) for the abuse of process
counterclaim. Accordingly, Counterclaim-Defendants' Motion for
Judgment on the Pleadings as to the False Advertising Counterclaim
asserted against Amcrest and Accumed is **DENIED**, Counterclaim-
Defendants' Motion for Judgment on the Pleadings as to the Abuse of
Process Counterclaim asserted against Amcrest and Accumed is
**GRANTED**, and Counterclaim-Defendants' Motion for Judgment on the
Pleadings as to Counterclaimants' First and Seventh Counterclaims
Based on Counterclaimants' Inability to Prove False Advertising and
Abuse of Process, Docket Entry No. 40, is **GRANTED in PART and
DENIED in PART.** Accordingly, the seventh counterclaim for abuse of
process asserted against Amcrest and Accumed is **DISMISSED with
PREJUDICE.**

The arguments made for and against the extraordinary number of motions already filed in this action persuades the court that early mediation is appropriate.  If the parties are unable to settle this action within the next thirty (30) days, they will provide the court with the name and contact information of an agreed upon mediator, or request that the court refer the case to Magistrate Judge Christina A. Bryan for a settlement conference.

**SIGNED** at Houston, Texas, this 5th day of May, 2023.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE